GUOFENG LI, ESQ. (CA343936)
VIP LAW GROUP PC
Email: LAWYERLI.CHRIS@GMAIL.COM
855 CONKLIN STREET STE S
FARMINGDALE, NY 11735
Telephone No.: (516) 808-6266
Attorney for Petitioner LI ZHAO

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

**LI ZHAO**,

*Petitioner-Plaintiff,*

*v.*

**MARKWAYNE MULLIN** , Secretary of the U.S. Department of Homeland Security, in their official capacity;

**TODD BLANCHE** , Attorney General of the United States, in their official capacity;

**DAVID VENTURELLA** , Acting Director of U.S. Immigration and Customs Enforcement, in their official capacity;

**THOMAS GILES** , Los Angeles ICE Field Office Director, in their official capacity;

**FERETI SEMAIA** , Warden of Adelanto ICE Processing Center, in their official capacity.

*Respondents-Defendants.*

Case No. ________________________

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; 8 U.S.C. §§ 1226, 1357; 5 U.S.C. § 706; COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. Petitioner LI ZHAO is a 48-year-old citizen of the People's Republic of China who was inspected and **lawfully admitted** to the United States at Los Angeles International Airport on

October 20, 2025, as a B-2 nonimmigrant visitor. She is a Christian who fled China after she was arrested, interrogated, beaten, and detained by Chinese police for attending an unregistered house church. In April 2026, while still within her period of authorized stay and well within one year of her arrival, she applied for asylum, withholding of removal, and protection under the Convention Against Torture. She has lived at a fixed address in Los Angeles County since her arrival, worships at a church in Monterey Park, and has no criminal history of any kind, anywhere in the world.

2. On or about September 7, 2026, officers of U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner without a judicial or administrative warrant in this District. On information and belief, the arresting officers did not know who Petitioner was before the encounter, did not ask her any question directed to whether she was likely to escape before a warrant could be obtained, and made no individualized determination on that question, in violation of 8 U.S.C. § 1357(a)(2), 8 C.F.R. § 287.8(c)(2)(ii), and the preliminary injunction this Court entered five days earlier in *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP, Dkt. No. 738 (C.D. Cal. Sept. 2, 2026). Petitioner has been held at the Adelanto ICE Processing Center ever since. Exhibit C.

3. Because Petitioner was admitted, her detention pending removal proceedings is governed, if at all, by 8 U.S.C. § 1226(a), the discretionary detention statute under which a noncitizen *may* be detained or *may* be released on bond or conditional parole, and under which she is entitled to request a custody redetermination before an Immigration Judge. 8 C.F.R. §§ 236.1(d), 1003.19, 1236.1(d). The Department of Homeland Security's own charging document concedes the point: the Notice to Appear checks the box stating that Petitioner "ha[s] been admitted to the United States," and charges her only under 8 U.S.C. § 1227(a)(1)(B) as a nonimmigrant who remained longer than permitted. Exhibit B at 1. She is not an "applicant for admission" under 8 U.S.C. § 1225(a)(1), is not "seeking admission" under § 1225(b)(2)(A), and is not described in § 1226(c). Even the Executive Branch's own position and the decisions most favorable to it concede

that § 1226(a) governs "admitted aliens who overstay their visas." *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026).

4. Nevertheless, Respondents have detained Petitioner for two weeks without any custody review, have not served her with a Notice of Custody Determination, and, on information and belief, are treating her as though she were subject to mandatory detention. That detention violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment, and it is the direct product of an arrest that was itself unlawful.

5. Petitioner asks this Court to issue the writ and order her immediate release under reasonable conditions of supervision; to enjoin Respondents from transferring her outside the Central District of California while this action is pending; and, in the alternative, to order that within seven days Respondents provide her a constitutionally adequate, individualized custody hearing at which the government bears the burden of proving, by clear and convincing evidence, that she is a danger to the community or a flight risk that no condition of release can mitigate.

**JURISDICTION**

6. This action arises under the Constitution of the United States, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., and the federal habeas statute, 28 U.S.C. § 2241. This Court has subject-matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1651 (All Writs Act), and Article I, § 9, cl. 2 of the Constitution (Suspension Clause). The Court may grant declaratory relief under 28 U.S.C. §§ 2201–2202.

7. Petitioner is "in custody" within the meaning of 28 U.S.C. § 2241(c)(3) because she is physically detained by Respondents at the Adelanto ICE Processing Center. Federal district courts retain jurisdiction over habeas petitions challenging the statutory and constitutional basis for immigration detention. *Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Petitioner does

not challenge any removal order (none exists), nor the commencement or adjudication of her removal proceedings. See 8 U.S.C. § 1252(b)(9), (g); *Jennings*, 583 U.S. at 294–95.

8. Section 1226(e) of Title 8 does not bar this action. It precludes review only of discretionary custody judgments; it does not bar challenges to "the extent of the Government's detention authority under the 'statutory framework' as a whole," nor constitutional challenges to the procedures by which detention is imposed. *Jennings*, 583 U.S. at 295–96; *Demore*, 538 U.S. at 516–17. Nor does 8 U.S.C. § 1252(f)(1) bar relief: this action seeks relief only "with respect to the application of such provisions to an individual alien," and Petitioner's arrest claim arises under 8 U.S.C. § 1357, which is not among the provisions enumerated in § 1252(f)(1). See *Vasquez Perdomo*, Dkt. No. 738, at 50–51.

## VENUE

9. Venue is proper in the Central District of California because Petitioner is confined at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, California 92301, within San Bernardino County, and her immediate custodian is located in this District. *Rumsfeld v. Padilla*, 542 U.S. 426, 443–47 (2004). Venue is also proper under 28 U.S.C. § 1391(e)(1) because Respondents are officers of the United States sued in their official capacities and a substantial part of the events giving rise to this action, including Petitioner's arrest in Los Angeles County and her continued detention in San Bernardino County, occurred in this District. Assignment to the Eastern Division is appropriate under General Order 24-09 because Petitioner is detained in San Bernardino County.

## PARTIES

10. Petitioner LI ZHAO is a native and citizen of the People's Republic of China (A-Number 242-522-149). She is detained at the Adelanto ICE Processing Center under the authority of Respondents. Exhibit C.

11. Respondent MARKWAYNE MULLIN is the Secretary of the U.S. Department of Homeland Security ("DHS") and is sued in his official capacity. He is charged with administration

and enforcement of the immigration laws, 8 U.S.C. § 1103(a), oversees ICE, and is a legal custodian of Petitioner. His address is U.S. Department of Homeland Security, Washington, D.C. 20528.

12. Respondent TODD BLANCHE is the Attorney General of the United States and is sued in his official capacity. He oversees the Executive Office for Immigration Review, which conducts removal and custody-redetermination proceedings, 8 U.S.C. § 1103(g), and is a legal custodian of Petitioner. His address is U.S. Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530.

13. Respondent DAVID VENTURELLA is the Acting Director of ICE and is sued in his official capacity. He is responsible for the detention and custody of noncitizens in removal proceedings and is a legal custodian of Petitioner. His address is 500 12th Street, S.W., Washington, D.C. 20536.

14. Respondent THOMAS GILES is the Field Office Director of the ICE Enforcement and Removal Operations Los Angeles Field Office, which has jurisdiction over the Adelanto ICE Processing Center, and is sued in his official capacity. He has direct authority over Petitioner's detention and release and is a legal custodian of Petitioner. His address is 300 North Los Angeles Street, Room 7631, Los Angeles, California 90012.

15. Respondent FERETI SEMAIA is the Warden of the Adelanto ICE Processing Center, the facility in which Petitioner is physically confined, and is sued in his official capacity. He is Petitioner's immediate custodian. His address is 10400 Rancho Road, Adelanto, California 92301.

16. Each Respondent is sued in an official capacity only. Pursuant to Fed. R. Civ. P. 25(d), any successor to a named Respondent is automatically substituted as a party.

## STATEMENT OF FACTS

### A. Petitioner's Persecution in China, Lawful Admission, and Asylum Application

17. Petitioner was born on May 20, 1978, in Junan County, Shandong Province, China. She is a graduate of Shandong University and, from 2016 until 2025, operated a small supermarket. She is divorced and has one child, a daughter born in 2012, who remains in Weihai, China, as do Petitioner's elderly parents. Exhibit A at 3–4, 6, 15–16.

18. Petitioner became a Christian in 2022 after a close friend introduced her to a house church during a period of severe depression. She attended house-church gatherings regularly. In 2025, Chinese police raided a house-church gathering she was attending; she was arrested, interrogated, beaten, detained, and threatened. She was forced to close her business, was unable to find other work, and was forbidden from attending church. After she fled, police and neighborhood-committee officials repeatedly visited her father's home to warn that she would be arrested and imprisoned if she returned. Exhibit A at 7–8, 15–16.

19. Petitioner was inspected and admitted to the United States at Los Angeles International Airport on October 20, 2025, as a B-2 nonimmigrant visitor, and was issued Form I-94 No. 774271860A4 with an admit-until date of April 19, 2026. Exhibit A at 3; Exhibit B at 1 (DHS allegation no. 3).

20. On April 10, 2026, while still within her authorized period of admission, Petitioner signed Form I-589, Application for Asylum and for Withholding of Removal, seeking asylum, withholding of removal, and protection under the Convention Against Torture on the basis of her religion, political opinion, and membership in a particular social group. On information and belief, the application was filed with USCIS in April 2026, within one year of her arrival. Exhibit A at 3–14. Her supporting declaration, executed April 17, 2026, was professionally translated and certified on July 2, 2026. Exhibit A at 15–18. The application remains pending.

21. Since her arrival, Petitioner has resided at 3216 Stevens Avenue, Rosemead, California 91770, in Los Angeles County, and receives mail at 801 West Valley Boulevard, Apt.

203, Alhambra, California 91803. Both addresses appear on the asylum application she submitted to the government months before her arrest. Exhibit A at 3, 6. She is a member of Immanuel Chinese Christian Church, 333 South Garfield, Monterey Park, California 91754, where she has worshipped continuously since arriving in the United States. Exhibit A at 8, 16.

22. Petitioner has never been arrested, charged with, or convicted of any offense in the United States. Exhibit A at 10. She has never been ordered removed, has never missed an immigration appointment or hearing, and had never before been in immigration custody.

**B. Petitioner's Warrantless Arrest**

23. On or about September 7, 2026, ICE officers arrested Petitioner in this District, [at or near her residence in Rosemead, California]. On information and belief, the officers had no judicial warrant and no administrative warrant of arrest (Form I-200) for Petitioner; had not identified her as a target of any enforcement operation before the encounter; asked her no questions directed to whether she was likely to escape before a warrant could be obtained; and made and documented no individualized determination that she was likely to do so. Petitioner did not flee, resist, or attempt to evade the officers.

24. Petitioner was not arrested at or near a border or port of entry in connection with an attempt to enter the United States. She was arrested in the interior of the United States, nearly eleven months after her lawful admission, at a location connected to the fixed address she had already reported to the government on her asylum application.

25. Five days before Petitioner's arrest, this Court found that ICE and CBP operate a "policy and practice" of "conduct[ing] warrantless arrests without consideration of whether the arrestee is likely to escape," and preliminarily enjoined Respondents Mullin and others "from enforcing their policy and practice of making warrantless civil immigration arrests in this District without a prearrest individualized determination by the arresting agent or officer of probable cause that the person being arrested is likely to escape before a warrant can be obtained, as required by 8 U.S.C. 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)." *Vasquez Perdomo*, Dkt. No. 738, at 3, 53. The

Court further ordered that "[m]ere presence within the United States in violation of United States immigration law is not, by itself, sufficient to conclude that a person is likely to escape," and required Respondents to document, in narrative form, "[t]he specific, particularized facts that supported the agent's or officer's prearrest probable cause to believe that the person was likely to escape before a warrant could be obtained." *Id.* at 53–54.

**C. Petitioner's Detention and Removal Proceedings**

26. ICE transported Petitioner to the Adelanto ICE Processing Center, where she has remained continuously detained. Exhibit C. On September 8, 2026, DHS served her with a Notice to Appear charging removability under 8 U.S.C. § 1227(a)(1)(B) as a nonimmigrant who remained in the United States longer than permitted. Exhibit B. The Notice to Appear affirmatively states that Petitioner "ha[s] been admitted to the United States"; it does not allege that she is an arriving alien or an alien present without admission or parole, and it does not allege any criminal or security ground of removability. Exhibit B at 1.

27. DHS filed the Notice to Appear with the Adelanto Immigration Court on or about September 11, 2026, and the court docketed the case on September 14, 2026. Exhibits B, E. A master calendar hearing is set for September 22, 2026, before Immigration Judge Jonathan Masaji Brent. Exhibits D, E. On September 21, 2026, through separate immigration counsel, Petitioner lodged her Form I-589 and supporting declaration with the Immigration Court. Exhibit A.

28. ICE has not served Petitioner with a Form I-286, Notice of Custody Determination, offering release on bond or recognizance. On information and belief, ICE has informed Petitioner that she is not eligible for bond and will be detained for the duration of her removal proceedings.

29. At no time since September 7, 2026, has any neutral adjudicator considered whether Petitioner presents a danger to the community or a risk of flight, whether any such risk could be mitigated by conditions of release, or whether her continued detention serves any legitimate governmental purpose.

**D. Harm to Petitioner and Her Release Plan**

30. Petitioner's detention has caused and continues to cause her serious harm. She is a survivor of police custody and beatings in China who came to the United States to escape confinement on account of her faith; her present confinement has revived the insomnia, anxiety, and depressive symptoms that had abated after her arrival. Exhibit A at 16. She has been separated from her church community, which is her only support network in this country, and is impeded in preparing her asylum case with counsel.

31. If released, Petitioner will return to her residence in Rosemead, California, will continue to attend Immanuel Chinese Christian Church, and will appear at every hearing before the Immigration Court and at every ICE check-in. She will comply with any condition of release the Court or ICE imposes, including electronic monitoring and regular reporting. Her asylum application, which she filed before any enforcement action was taken against her, gives her every incentive to appear and prosecute her claim to completion.

**LEGAL FRAMEWORK**

**A. The INA's Two Pre-Removal Detention Regimes**

32. The INA establishes two distinct regimes for detention before entry of a removal order. Section 1225(b) governs "applicants for admission"—noncitizens "present in the United States who ha[ve] not been admitted" or who "arrive[] in the United States." 8 U.S.C. § 1225(a)(1). Within that group, § 1225(b)(2)(A) requires detention of an applicant "seeking admission" whom an examining officer determines "is not clearly and beyond a doubt entitled to be admitted." Section 1226, by contrast, governs noncitizens who are already in the United States and who are charged as removable. Under § 1226(a), the Secretary "may" arrest and detain such a noncitizen "[o]n a warrant issued by the Attorney General" and "pending a decision on whether the alien is to be removed," and "may" release her on bond or conditional parole. 8 U.S.C. § 1226(a)(1)–(2); *Jennings*, 583 U.S. at 288–90, 303.

33. A noncitizen detained under § 1226(a) may seek a custody redetermination from an Immigration Judge at any time before a final order of removal. 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1). At such a hearing the Immigration Judge considers whether the noncitizen is a danger to persons or property or a flight risk. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). Only noncitizens described in § 1226(c)—those with qualifying criminal or terrorism-related grounds—are excluded from that process. Petitioner is not described in § 1226(c).

**B. An Admitted Noncitizen Is Detained, If at All, Under § 1226(a)**

34. "Admission" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). A noncitizen who was admitted and later overstays is charged as deportable under § 1227(a)(1)(B), not as inadmissible under § 1182. She is not an "applicant for admission" under § 1225(a)(1), because she has been admitted, and she is not "seeking admission" under § 1225(b)(2)(A), because she already received it. By the statute's plain terms, § 1225(b) does not reach her, and § 1226(a) does. DHS charged Petitioner on exactly that basis. Exhibit B at 1.

35. This is not a contested proposition. In July 2025, ICE adopted interim guidance, later endorsed by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), asserting that noncitizens who entered *without inspection* are "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A). That guidance and that decision are by their own terms limited to persons "present in the United States without admission." *Id.* at 216. The guidance itself recognizes that noncitizens who were admitted and are charged as deportable under § 1227 remain eligible for bond under § 1226(a). And the only court of appeals decision to have fully accepted the government's reading of § 1225(b)(2)(A) rested on precisely that distinction: "Section 1226(a) undeniably does work independent from § 1225(b)(2)(A) because only § 1226(a) applies to admitted aliens who overstay their visas." *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). The Second, Sixth, and Eleventh Circuits have rejected

the government's reading even as to persons who entered without inspection. *Barbosa da Cunha v. Freden*, No. 25-____ (2d Cir. Apr. 28, 2026); *Lopez-Campos v. Raycraft*, No. 26-____ (6th Cir. May 11, 2026); *Hernandez Alvarez v. Warden*, No. 25-14065 (11th Cir. May 6, 2026). No court has held that a noncitizen who was inspected and admitted on a visa is subject to § 1225(b)(2)(A).

36. Whatever deference the BIA's interpretation of § 1225(b)(2)(A) might once have commanded, none is due now. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412–13 (2024). This Court must "exercise [its] independent judgment in deciding whether an agency has acted within its statutory authority." *Id.* at 412. On the text, Petitioner's detention is authorized, if at all, only by § 1226(a), with the custody-review process that section and its regulations provide.

**C. A Warrantless Civil Immigration Arrest Requires an Individualized Prearrest Determination That the Person Is Likely to Escape**

37. "The federal statutory structure instructs when it is appropriate to arrest a[ noncitizen] during the removal process," and that authority is "more limited" where "no federal warrant has been issued." *Arizona v. United States*, 567 U.S. 387, 407–08 (2012). Section 1226(a) authorizes arrest and detention "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). The sole statutory exception permits an immigration officer to arrest a noncitizen without a warrant only "if he has reason to believe that the [noncitizen] so arrested is in the United States in violation of any such law or regulation *and is likely to escape before a warrant can be obtained for his arrest*." 8 U.S.C. § 1357(a)(2) (emphasis added). The implementing regulation is to the same effect: a warrant of arrest "shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii).

38. "Reason to believe" means probable cause, *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980), and the determination must be particularized to the person arrested. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). Where the government "did not allege . . . the existence of grounds for a reasonable belief that [the arrestees] were particularly likely to escape," a warrantless civil

immigration arrest is impermissible. *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995). And, as this Court held in *Vasquez Perdomo*, an officer may not satisfy the likelihood-of-escape requirement by pointing to unlawful presence alone, because that reading "would render the language regarding the likelihood of escape determination superfluous." Dkt. No. 738, at 34, 53–54.

39. Under the preliminary injunction in force in this District since September 2, 2026, Respondents are enjoined from making warrantless civil immigration arrests without a prearrest, individualized probable-cause determination of likelihood of escape, and must contemporaneously document the specific, particularized facts supporting that determination, together with the date, time, and location of the arrest. *Id.* at 53–54. Petitioner's arrest occurred within the geographic and temporal scope of that injunction.

**D. The Due Process Clause Independently Requires an Individualized Custody Determination**

40. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The Clause applies to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. Its protections are at their strongest for a noncitizen who, like Petitioner, was lawfully admitted and has developed ties to this country. *Landon v. Plasencia*, 459 U.S. 21, 32–34 (1982); *Mathews v. Diaz*, 426 U.S. 67, 77–80 (1976).

41. Civil detention is constitutionally permissible only when it bears a "reasonable relation" to a legitimate, non-punitive governmental purpose—in the immigration context, preventing flight and protecting the community—and only when accompanied by "adequate procedural protections." *Zadvydas*, 533 U.S. at 690–91; *Foucha v. Louisiana*, 504 U.S. 71, 80–81 (1992); *Demore*, 538 U.S. at 527–28. The minimum requirement is an individualized determination, by a neutral decisionmaker, of whether those purposes are actually served by

detaining the particular person. *Foucha*, 504 U.S. at 81–83; *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

42. Section 2241 contains no statutory exhaustion requirement; exhaustion in immigration habeas cases is prudential and is excused where pursuit of administrative remedies would be futile, where the administrative body lacks authority to grant the relief sought, or where irreparable injury would result from delay. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007); *Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004).

43. Each ground applies. Respondents' position, on information and belief, is that Petitioner is ineligible for any bond hearing, and Immigration Judges are bound by agency precedent on the question of their own jurisdiction. Neither the Immigration Court nor the BIA may declare the agency's detention or arrest policies unlawful, adjudicate Petitioner's constitutional claims, order the suppression of an unlawful arrest as a basis for release, or order her release on constitutional grounds. And every additional day of administrative process is a day of unlawful confinement of a torture survivor who fled state custody in her home country. To the extent Petitioner has not already sought a custody redetermination from the Immigration Court, exhaustion should be excused; to the extent she seeks one and is refused, no further administrative remedy exists.

**CLAIMS FOR RELIEF**

**COUNT ONE**

**Detention in Violation of the Immigration and Nationality Act**

**(8 U.S.C. § 1226(a); 28 U.S.C. § 2241)**

44. Petitioner realleges and incorporates the preceding paragraphs.

45. Petitioner was inspected and admitted to the United States. She is not an applicant for admission under 8 U.S.C. § 1225(a)(1), is not seeking admission under § 1225(b)(2)(A), is not

an arriving alien, and is not described in § 1226(c). Her detention pending a decision on removability is governed exclusively by § 1226(a).

46. Section 1226(a) and its implementing regulations entitle Petitioner to an individualized custody determination and to request a custody redetermination before an Immigration Judge. 8 C.F.R. §§ 236.1(d), 1003.19, 1236.1(d).

47. Respondents have detained Petitioner as though she were subject to mandatory detention, have denied her the custody-review process that § 1226(a) provides, and have thereby detained her without statutory authority. Her detention is "in violation of the . . . laws . . . of the United States." 28 U.S.C. § 2241(c)(3).

**COUNT TWO**

**Unlawful Warrantless Arrest and Resulting Detention**

**(8 U.S.C. §§ 1226(a), 1357(a)(2); 8 C.F.R. § 287.8(c)(2); 5 U.S.C. § 706(2); 28 U.S.C. § 2241)**

48. Petitioner realleges and incorporates the preceding paragraphs.

49. Respondents arrested Petitioner without a warrant. Section 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) permitted that arrest only if the arresting officer had, before the arrest, probable cause particularized to Petitioner that she was likely to escape before a warrant could be obtained. The officers had no such probable cause and made no such determination. Petitioner had a fixed residence known to the government, a pending asylum application, an established church community, and no history of flight or noncompliance; she did not flee or resist. Any purported determination that she was likely to escape could have rested only on her immigration status, which this Court has held is insufficient as a matter of law. *Vasquez Perdomo*, Dkt. No. 738, at 34, 53–54.

50. Respondents' arrest of Petitioner was made pursuant to, and is a product of, the Escape Risk Policy that this Court found likely unlawful and preliminarily enjoined in this District on September 2, 2026. It was agency action "not in accordance with law" and "in excess of statutory . . . authority." 5 U.S.C. § 706(2)(A), (C).

51. Because Petitioner's arrest was not authorized by § 1357(a)(2), and because § 1226(a) otherwise authorizes arrest and detention only "[o]n a warrant issued by the Attorney General," Petitioner's resulting custody is without lawful authority and is "in violation of the . . . laws . . . of the United States." 28 U.S.C. § 2241(c)(3). The appropriate remedy is release. At a minimum, Respondents should be required to produce with their return the Form I-213 and any other contemporaneous record of the arrest, including the documentation this Court's injunction requires.

**COUNT THREE**

**Procedural Due Process — Detention Without an Individualized Custody Hearing**

**(Fifth Amendment; 28 U.S.C. § 2241)**

52. Petitioner realleges and incorporates the preceding paragraphs.

53. Petitioner has a fundamental liberty interest in freedom from physical confinement. The government's interest in detaining a lawfully admitted asylum applicant with no criminal history, a fixed residence, a church community, and a perfect record of compliance, pending proceedings that have only just begun, is minimal. The risk of erroneous deprivation under a regime that provides no hearing at all is total. Under *Mathews v. Eldridge*, 424 U.S. at 335, due process requires, at a minimum, a prompt hearing before a neutral adjudicator at which the need for Petitioner's detention is actually examined.

54. Due process further requires that, at that hearing, the government bear the burden of justifying continued civil detention by clear and convincing evidence, and that the adjudicator consider alternatives to detention and Petitioner's ability to pay any bond. *Addington v. Texas*, 441 U.S. 418, 425–27 (1979); *Foucha*, 504 U.S. at 81–83; *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011); *Hernandez*, 872 F.3d at 990–94. Petitioner acknowledges that *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), held that due process did not require a clear-and-convincing burden at a *second* bond hearing for a petitioner with a criminal history who had already received one hearing at which he bore the burden. *Rodriguez Diaz* expressly preserved as-

applied challenges and directed an individualized inquiry. *Id.* at 1207–08; see *id.*, 84 F.4th 894 (9th Cir. 2023) (Paez, J., statement respecting denial of rehearing en banc). Here, Petitioner has had no hearing of any kind, was lawfully admitted, has no criminal history, was seized through an arrest that violated both the governing statute and an injunction of this Court, and has been detained solely on the basis of a civil visa overstay; as applied to her, the *Mathews* factors require that the government bear the burden.

55. Respondents' detention of Petitioner without any individualized custody hearing, and without the procedural safeguards the Constitution requires at such a hearing, violates the Due Process Clause of the Fifth Amendment.

**COUNT FOUR**

**Substantive Due Process — Detention Not Reasonably Related to Any Legitimate Purpose**

**(Fifth Amendment; 28 U.S.C. § 2241)**

56. Petitioner realleges and incorporates the preceding paragraphs.

57. Civil immigration detention is permissible only insofar as it serves the government's legitimate interests in securing the noncitizen's appearance and protecting the public. *Zadvydas*, 533 U.S. at 690–91; *Demore*, 538 U.S. at 527–28. Detention that is not reasonably related to those purposes, or that is excessive in relation to them, is punitive and violates substantive due process. *Bell v. Wolfish*, 441 U.S. 520, 538–39 (1979); *Jones v. Blanas*, 393 F.3d 918, 932–34 (9th Cir. 2004).

58. Petitioner presents no danger to anyone. She presents no meaningful risk of flight: she has a pending asylum application she filed voluntarily and within the statutory deadline, a fixed residence in Los Angeles County that she reported to the government months before her arrest, a church community, a master calendar hearing already scheduled, and every incentive to remain and pursue the protection she came here to seek. Any residual risk can be fully addressed by conditions of release. Her continued detention bears no reasonable relation to any legitimate governmental purpose and is therefore unlawful.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

a. Assume jurisdiction over this matter;

b. Pursuant to 28 U.S.C. § 2243, issue an Order to Show Cause directing Respondents to file a return within three days of service, together with the Form I-213 and all other contemporaneous documentation of Petitioner's arrest, and set this matter for hearing at the earliest practicable date;

c. Immediately, and pending resolution of this Petition, enjoin Respondents and their agents from transferring Petitioner outside the Central District of California, and order that Respondents provide Petitioner's counsel at least seventy-two hours' written notice before any proposed transfer;

d. Declare that Petitioner is detained under 8 U.S.C. § 1226(a) and is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) or any other provision;

e. Declare that Petitioner's warrantless arrest violated 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2), and that Respondents' detention of Petitioner without an individualized custody hearing violates the Immigration and Nationality Act and the Fifth Amendment;

f. Issue a writ of habeas corpus ordering Respondents to release Petitioner forthwith under reasonable conditions of supervision;

g. In the alternative, order Respondents to provide Petitioner, within seven (7) days, an individualized custody hearing before an Immigration Judge at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk that no condition of release can mitigate, and at which the Immigration Judge considers alternatives to detention and Petitioner's ability to pay any bond; and order that if no such hearing is provided within seven days, Petitioner be released;

h. Award Petitioner reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable authority; and

i. Grant such further relief as the Court deems just and proper.

Dated: September 21, 2026

Respectfully submitted,

_/s/ Guofeng Li_
GUOFENG LI, ESQ. (CA SBN 343936)
VIP LAW GROUP PC
Attorney for Petitioner LI ZHAO

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I am the attorney for Petitioner LI ZHAO and submit this verification on her behalf pursuant to 28 U.S.C. § 2242 because she is detained at the Adelanto ICE Processing Center and cannot readily sign this petition. I have discussed the facts stated in this Petition with Petitioner and have reviewed the documents attached as exhibits. I verify under penalty of perjury under the laws of the United States that the factual statements in this Petition are true and correct to the best of my knowledge, information, and belief.

Executed on September 21, 2026, at Farmingdale, New York.

*/s/ Guofeng Li*
GUOFENG LI, ESQ.

## CERTIFICATION OF COMPLIANCE WITH FED. R. CIV. P. 5.2

Counsel certifies that this Petition and the accompanying exhibits have been redacted in accordance with Fed. R. Civ. P. 5.2(a) and Local Rule 5.2-1. Petitioner's minor child is identified by year of birth only; dates of birth are identified by year only; and passport, Social Security, and financial account numbers have been omitted or redacted. Unredacted copies are maintained by counsel and will be lodged under seal upon request of the Court.

## INDEX OF EXHIBITS

Exhibit A Form I-589, Application for Asylum and for Withholding of Removal, with Declaration of Li Zhao and Certified Translation (as filed with the Adelanto Immigration Court, Sept. 21, 2026)

Exhibit B Form I-862, Notice to Appear (Sept. 8, 2026)

Exhibit C ICE Online Detainee Locator Record

Exhibit D Immigration Court Notice of Hearing (Sept. 14, 2026)

Exhibit E EOIR Automated Case Information (Sept. 19, 2026)