UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LI ZHAO,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>Respondents. | Case No. 5:26-cv-05531-DTB<br><br>**ORDER GRANTING PETITION FOR WRIT OF PETITION HABEAS CORPUS** |

**I.**

**PROCEEDINGS**

On September 21, 2026, petitioner Li Zhao ("Petitioner"), represented by counsel, filed a "Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241; 8 U.S.C. §§ 1226, 1357; 5 U.S.C. § 706; Complaint for Declaratory Relief and Injunctive Relief" ("Petition") (Docket No. 1), accompanied by five supporting exhibits (Docket No. 1-2).

/ / /

/ / /

/ / /

The Petition alleges the following claims: (1) Petitioner's detention is in violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a); (2) Petitioner's detention is the result of an unlawful warrantless arrest; (3) Petitioner's detention is in violation of her right to procedural due process under the Fifth Amendment; and (4) Petitioner's detention is in violation of her right to substantive due process under the Fifth Amendment. (Petition at 13-16).[1] The Petition seeks, among other things, Petitioner's release from custody. (Id. at 17-18).

On September 29, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 4), Respondent filed an Answer to the Petition ("Answer") (Docket No. 7), accompanied by two supporting exhibits (Docket Nos. 7-1 and 7-2). In the Answer, Respondent acknowledges that Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to Rodriguez Vazquez v. Bostock, 183 F.4th 1160, (9th Cir. 2026) ("Rodriguez Vazquez")[2] (Docket No. 7 at

---

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

[2] On July 30, 2026, the Ninth Circuit issued its opinion in Rodriguez Vasquez, upholding the reasoning and conclusion of the Judgment of a similar case from the Central District of California, Maldonado Bautista v. Santacruz, Case No. 5:25-cv-01873-SSS-BFM ("Bautista").

On December 18, 2025, District Judge Sykes entered final judgment and granted declaratory relief to all members of the bond eligible class in Bautista. See Bautista, 813 F. Supp. 3d 1084 (C.D. Cal. 2025). The members of the certified Bond Eligible Class are: "All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." Bautista, 813 F. Supp. 3d a1075, 1077-78 (C.D. Cal. 2025). Pursuant to the final judgment entered, the court declared that "the Bond Eligible Class members are detained under 8 U.S.C. § 1226(a)" and that "the Bond Eligible Class members are not subject to mandatory detention under § 1225(b)(2), and are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge." Bautista v. Noem, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025). On February 18, 2026, the court granted a motion to enforce the declaratory judgment and vacated the Board of Immigration Appeals' decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) as contrary to law under the Administrative Procedures Act. Bautista v. Santacruz, 2026 WL 468284, at *12 (C.D. Cal. Feb. 18, 2026). "On March 6, 2026, the Ninth Circuit administratively stayed the December 18, 2025 declaratory judgment in [Bautista] 'insofar as [it] extends beyond the Central District of California' pending a ruling on

2-3). In the Answer, Respondent also states that "[w]hile Petitioner seeks immediate release, to the extent Petitioner would be entitled to any remedy via his Petition, at most it would be ordering a bond hearing to be held before an Immigration Judge under Section 1226(a)." (Docket No. 7 at 3).

On October 1, 2026, Petitioner filed her Reply. (Docket No. 8).

Thus, this matter is now ready for decision. For the reasons set forth herein, the Court grants the Petition.

## II.

## BACKGROUND[3]

Petitioner was born on May 20, 1978, in Junan County, Shandong Province, China. (Petition at ¶ 17). She is a graduate of Shandong University and, from 2016 until 2025, operated a small supermarket. (Id.). She is divorced and has one child, a daughter born in 2012, who remains in Weihai, China, as do Petitioner's elderly parents. (Id.).

---

the Government's motion for a stay pending appeal." Castro v. Johnson, Case No. 5:26-cv-01592-PVC, 2026 WL 1104766, at *3 (citation omitted). "On March 31, 2026, the Ninth Circuit granted the government's emergency motion for a stay pending appeal as follows: (1) the Bautista court's December 18, 2025 class certification order and final judgment is stayed pending appeal, insofar as they extend beyond the Central District of California; and (2) the district court's February 18, 2026 post-judgment order vacating Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025) is stayed pending appeal." Vivas v. Santacruz, Case No. 5:26-cv-01926-JFW-KES, 2026 WL 1122208, at *1 (C.D. Cal. Apr. 20, 2026) (citation omitted). Therefore, "the Bautista court's December 18, 2025 judgment remains in place as to the Central District of California." Id. On April 10, 2026, the Ninth Circuit granted the parties' request to suspend the briefing schedule in Bautista pending the Ninth Circuit's decision in Rodriguez Vasquez v. Bostock, et al, No. 25-6842. (See Bautista, No. 25-7958, 26-1044, Dkt. No. 16).

Accordingly, the declaratory judgment entered in Bautista has "the force and effect of a final judgment or decree." 28 U.S.C. § 2201(a); see also Haaland v. Brackeen, 599 U.S. 255, 293 (2023) ("After all, the point of a declaratory judgment is to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by res judicata.") (citation and internal quotation marks omitted). As parties to Bautista, Respondents are obligated to comply. See Maness v. Meyers, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly.").

[3] The Background is based primarily on information contained in the Petition.

Petitioner became a Christian in 2022 after a close friend introduced her to a house church during a period of severe depression. (Id. at ¶ 18). She attended house-church gatherings regularly. (Id.). In 2025, Chinese police raided a house-church gathering she was attending; she was arrested, interrogated, beaten, detained, and threatened. (Id.). She was forced to close her business, was unable to find other work, and was forbidden from attending church. (Id.). After she fled, police and neighborhood-committee officials repeatedly visited her father's home to warn that she would be arrested and imprisoned if she returned. (Id.).

Petitioner was inspected and admitted to the United States at Los Angeles International Airport on October 20, 2025, as a B-2 nonimmigrant visitor, and was issued Form I-94 No. 774271860A4 with an admit-until date of April 19, 2026. (Id. at ¶ 19).

On April 10, 2026, while still within her authorized period of admission, Petitioner signed Form I-589, Application for Asylum and for Withholding of Removal, seeking asylum, withholding of removal, and protection under the Convention Against Torture on the basis of her religion, political opinion, and membership in a particular social group. (Id. at ¶ 20). On information and belief, the application was filed with United States Citizenship and Immigration Services in April 2026, within one year of her arrival. (Id.). Her supporting declaration, executed April 17, 2026, was professionally translated and certified on July 2, 2026. (Id.). The application remains pending. (Id.).

Since her arrival, Petitioner has resided at an address in Rosemead, California, and receives mail at an address in Alhambra, California. (Id. at ¶ 21). Both addresses appear on the asylum application she submitted to the government months before her arrest. (Id.). She is a member of Immanuel Chinese Christian Church in Monterey Park, California, and has worshipped there continuously since arriving in the United States. (Id.).

Petitioner has never been arrested, charged with, or convicted of any offense in the United States. (Id. at ¶ 22). She has never been ordered removed, has never missed an immigration appointment or hearing, and had never before been in immigration custody. (Id.).

On or about September 7, 2026, United States Immigration and Customs Enforcement ("ICE") officers arrested Petitioner in this District, at or near her residence in Rosemead, California. (Id. at ¶ 23). On information and belief, the officers had no judicial warrant and no administrative warrant of arrest (Form I-200) for Petitioner; had not identified her as a target of any enforcement operation before the encounter; asked her no questions directed to whether she was likely to escape before a warrant could be obtained; and made and documented no individualized determination that she was likely to do so. (Id.). Petitioner did not flee, resist, or attempt to evade the officers. (Id.).

Petitioner was not arrested at or near a border or port of entry in connection with an attempt to enter the United States. (Id. at ¶ 24). She was arrested in the interior of the United States, nearly eleven months after her lawful admission, at a location connected to the fixed address she had already reported to the government on her asylum application. (Id.).

ICE transported Petitioner to the Adelanto ICE Processing Center, where she has remained continuously detained. (Id. at ¶ 26). On September 8, 2026, the Department of Homeland Security ("DHS") served her with a Notice to Appear charging removability under 8 U.S.C. § 1227(a)(1)(B) as a nonimmigrant who remained in the United States longer than permitted. (Id.). The Notice to Appear affirmatively states that Petitioner "ha[s] been admitted to the United States"; it does not allege that she is an arriving alien or an alien present without admission or parole, and it does not allege any criminal or security ground of removability. (Id.).

/ / /

On or about September 11, 2026, DHS filed the Notice to Appear with the Adelanto Immigration Court, and the court docketed the case on September 14, 2026. (Id. at ¶ 27). A master calendar hearing is set for September 22, 2026, before an Immigration Judge. (Id.). On September 21, 2026, through separate immigration counsel, Petitioner lodged her Form I-589 and supporting declaration with the Immigration Court. (Id.).

ICE has not served Petitioner with a Form I-286, Notice of Custody Determination, offering release on bond or recognizance. (Id. at ¶ 27). On information and belief, ICE has informed Petitioner that she is not eligible for bond and will be detained for the duration of her removal proceedings. (Id.).

At no time since September 7, 2026, has any neutral adjudicator considered whether Petitioner presents a danger to the community or a risk of flight, whether any such risk could be mitigated by conditions of release, or whether her continued detention serves any legitimate governmental purpose. (Id. at ¶ 29).

Petitioner's detention has caused and continues to cause her serious harm. (Id. at ¶ 30). She is a survivor of police custody and beatings in China who came to the United States to escape confinement on account of her faith; her present confinement has revived the insomnia, anxiety, and depressive symptoms that had abated after her arrival. (Id.). She has been separated from her church community, which is her only support network in this country, and is impeded in preparing her asylum case with counsel. (Id.).

If released, Petitioner will return to her residence in Rosemead, California, will continue to attend Immanuel Chinese Christian Church, and will appear at every hearing before the Immigration Court and at every ICE check-in. (Id. at ¶ 31). She will comply with any condition of release the Court or ICE imposes, including electronic monitoring and regular reporting. (Id.). Her asylum application, which

she filed before any enforcement action was taken against her, gives her every incentive to appear and prosecute her claim to completion. (Id.)

Petitioner is being detained at Adelanto ICE Processing Center in Adelanto, California. (Id. at ¶¶ 9-10; see https:/locator.ice.gov/odls/#/results).

**III.**

**LEGAL AUTHORITY**

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment (see Petition at 15-16), which prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.")

(internal quotation marks omitted); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process.") (internal quotation marks omitted). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) (collecting cases extending Mathews "to the context of immigration detention"). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural

requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

## IV.

## DISCUSSION

### A. **Petitioner is Entitled to Habeas Relief.**

Petitioner claims that her arrest and detention on September 7, 2026, without any pre-deprivation notice or hearing, constituted a violation of due process. (See Petition at 3, 15-16). Specifically, Petitioner alleges that she lawfully arrived in the United States in 2025 as a B-2 nonimmigrant visitor, and that she has since applied for asylum and thus has pursued lawful immigration status pursuant to the laws and instruction of the government. (Id. at ¶¶ 1, 19-20). During the pendency of her asylum application, Petitioner has complied with all requirements of the process, and the government has permitted her to remain free and at liberty while exercising authority over her application for immigration relief. (Id. at ¶¶ 1, 22). She has lived openly at a known address, established community ties, and has no criminal record. (Id. at ¶¶ 1, 21, 53).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690. The protection afforded by the Due Process Clause runs to citizens and noncitizens alike. J. G. G., 604 U.S. at 673 (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). Evaluating the contours of Petitioner's due process rights proceeds in two steps: "[T]he first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure

any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Ky. Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

Here, the Court finds that Petitioner has demonstrated a protected liberty interest in remaining at liberty in the community absent sufficient justification for her re-detention, based on the government's decision not to detain her or otherwise impede her liberty while exercising authority over her for purposes of adjudicating her application for immigration relief. Indeed, a number of federal courts in California have found a protectable liberty interest in nearly identical circumstances. See Tzoc v. LaRose, Case No. 26-cv-3965-GPC-VET, 2026 WL 2227161, at *2-3 (S.D. Cal. Aug. 3, 2026); Dai v. Janecha, Case No. 5:26-cv-03966-PD, 2026 WL 2164154, at *1-2 (C.D. Cal. July 24, 2026); E.E.O.H. v. Noem, Case No. 1:26-cv-01266-JLT-SAB-HC, 2026 WL 850363, at *4-5 (E.D. Cal. Mar. 26, 2026), report and recommendation adopted, 2026 WL 967670 (E.D. Cal. Apr. 9, 2026); Villanueva-Montanez v. Lyons, Case No. 2:26-cv-00954-DAD-CKD, 2026 WL 797930, at *1 (E.D. Cal. Mar. 23, 2026); Kalkan v. Chestnut, Case No. 1:26-cv-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026); Kharitonova v. Albarran, Case No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026).

As demonstrated in the cases cited above, courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, such as applying for asylum, and the government chose not to detain them. See also Gagik T. v. Chestnut, et al, Case No. 1:26-cv-04337-MWJS, 2026 WL 1837413, at *3-4 (E.D. Cal. June 25, 2026) (granting release to a noncitizen who entered the country on a visitor visa, applied for asylum, was granted employment authorization and remained out of custody for six years); Kharitonova,

2026 WL 531441 at *2 ("Although the Government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual who was initially detained.").

The Court finds the reasoning of these cases persuasive. Petitioner lawfully entered the United States on October 20, 2025, pursuant to a B-2 Nonimmigrant Visa, and thereafter, on April 10, 2026, proceeded through the established lawful process to apply to the government for asylum. (Petition at ¶¶ 1, 19-20). During the year that Petitioner has been present in the United States, the government accepted her asylum application. (Id.). Thus, Respondents have had full knowledge of Petitioner's identity, immigration status and location during the pendency of her immigration application, or since April 10, 2026. With this knowledge, the government has continuously elected not to detain Petitioner while exercising authority over her legal proceedings, all the while permitting her to remain free and at liberty while her application was pending.

Considering the arc of the government's sustained conduct towards Petitioner, the Court finds that Petitioner developed a substantial liberty interest in continued release.

In light of this protected liberty interest, the Court turns to consider what process Petitioner is owed before the government may take that liberty interest away. Petitioner claims that due process was required before she was taken into custody. (Petition at 15-16). She argues that the appropriate habeas remedy is for her to be released back to the community. (Id. at 3; see also Docket No. 8 at 6-7). The Court agrees.

/ / /

/ / /

/ / /

To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three factors set forth in Mathews:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

As discussed below, the Court finds that each of the three Mathews factors supports Petitioner's constitutional right to process before she was re-detained.

With regard to the first factor, as discussed above, the liberty interest at stake here is significant. Petitioner has a substantial interest in remaining in the community, practicing her faith with her church, and pursuing her application for immigration relief. See Ortega, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (holding that the petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

Turning to the second Mathews factor, there is a significant risk that the government will erroneously deprive Petitioner of that liberty interest if it does not provide her with pre-deprivation process. The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews, 424 U.S. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). And where a petitioner has not received a hearing or other process prior to the revocation of his liberty, "the risk of an erroneous deprivation [of liberty] is high." Singh v. Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

Finally, Respondents have not articulated any countervailing government interest—the third Mathews factor—that supports providing this process only after Petitioner has been detained. Due process "usually" requires a hearing before the State deprives a person of liberty or property. Zinermon, 494 U.S. at 127. Exceptions to that general rule are appropriate where quick action is necessary or where it is impractical to impossible to provide pre-deprivation process. Id. at 128. But neither of those exceptions appears to be applicable to the instant circumstances. Respondents have not argued that Petitioner was an imminent risk of flight or that some other exigency required her immediate arrest and detention on September 7, 2026.

In short, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing [or other procedure] is low." Ortega, 415 F. Supp. 3d at 970; see also Morrissey v. Brewer, 408 U.S. 471, 483 (1972) (noting that "the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has no interest in revoking parole without some informal procedural guarantees"). Because each of the Mathews factors favors Petitioner's bid for pre-deprivation process, the Court finds that Petitioner's detention—which was accompanied by no process—violates the Due Process Clause.

As for the appropriate remedy for the government's due process violation, many courts considering this issue have found that a post-detention bond hearing does not rectify the harm of a due process violation because the petitioner "will have already suffered the harm" that such petitions raise—her potentially erroneous detention. See e.g., Charan S. v. Warden, CA City, Case No. 1:26-cv-3017, TLN-JDP, 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the

initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months"); Saballos Rosales v. Noem, Case No. 5:26-cv-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (granting Temporary Restraining Order and finding that "the post-detention process [of a bond hearing] that Rosales did receive, and will receive, is no substitute for the pre-detention process she was owed.") (citing Hasratyan); Hasratyan v. Bondi, Case No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026) (concluding that where a petitioner received a procedurally deficient post-detention bond hearing, "the post-detention process Petitioner received and will receive is no substitute for the pre-detention process she was owed"); Domingo v. Kaiser, Case No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14 2025); see also Riveros-Sanchez v. City of Easton, 861 F. App'x 819, 822 (3d Cir. 2021) ("[I]f a pre-deprivation hearing was required, then no amount of post deprivation process could cure the . . . initial failure to provide a hearing.").

As with similar cases in this Circuit, the Court finds that the appropriate remedy in this case is to order Petitioner placed in the position she would have enjoyed absent the due process violation—that is, she should be released from detention. See e.g., E.A.T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (granting such relief); Jasbir v. Warden, Case No. 26-cv-579-JES-BJW, 2026 WL 353354, at *4 (S.D. Cal. Feb. 9, 2026) (ordering release due to due process violation despite government's argument that the petitioner was only entitled to bond hearing as a Maldonado Bautista class member); Prior v. Chestnut, Case No. 1:25-cv-01131-JLT-EPG-HC, 2026 WL 309560, at *9 (E.D. Cal. Feb. 5, 2026) (recommending immediate release as appropriate remedy for due process violation).

/ / /

/ / /

Accordingly, the Court finds habeas relief is warranted on Petitioner's claim that her right to due process was violated by the lack of notice and hearing prior to his arrest and detention. The remaining claims in the Petition are denied as moot in light of the relief granted on this claim.

## V.

## ORDER

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; and (2) a writ of habeas corpus be issued (a) requiring Respondents to immediately release Petitioner Li Zhao (A# 242-522-149) from custody, subject to the same conditions (if any) that she was subject to at the time she was arrested and re-detained, (b) ordering Respondents to return all property confiscated from Petitioner during her arrest and processing into detention; (c) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (d) ordering Respondents to file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: October 13, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE